UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Theodore J. Bolick, | ) | Civil Action No.: 5:20-cv-02888-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Phillip Thompson, Officer Tomkins, | ) | |
| and Officer John Doe, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Theodore J. Bolick filed this pro se 42 U.S.C. § 1983 action in state court against Defendants—the Sheriff of Horry County and two deputies—alleging his extradition from North Carolina to South Carolina was unlawful. Defendants removed the action to this Court and filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a related motion for a protective order. The Magistrate Judge recommends granting both motions. *See* Report and Recommendation ("R & R") [ECF No. 56].[1] Plaintiff has filed objections to the R & R, and Defendants have filed a reply to Plaintiff's objections. *See* Pl.'s Objs. [ECF No. 58]; Defs.' Reply [ECF No. 59]. The Court adopts in part and rejects in part the R & R for the reasons herein.

**Legal Standards**

**I.    Review of the R & R**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination

---

[1]    The Magistrate Judge issued the R & R pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Court is mindful of its duty to liberally construe Plaintiff's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing "[a] document filed *pro se* is to be liberally construed" (internal quotation marks omitted)). *But see United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) ("Although courts must liberally construe the claims of *pro se* litigants, the special judicial solicitude with which a district court should view pro se filings does not transform the court into an advocate." (cleaned up)).

remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court need only review for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II.     Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 395 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court will "consider as true all well-pleaded allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and of unquestioned authenticity." *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *see Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("A federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion.").

**Background**

I.  **Uniform Criminal Extradition Act**

"[A] number of circuit courts, including [the United States Court of Appeals for the Fourth Circuit], have held that a violation of the [Uniform Criminal Extradition Act] can provide a basis for a § 1983 claim on the ground that the state extradition statutes are derivative of or are implementing federal law (i.e., the Extradition Clause [U.S. Const. art. IV, § 2, cl. 2] and the federal extradition statute [18 U.S.C. § 3182])." *Scull v. New Mexico*, 236 F.3d 588, 596 n.1 (10th Cir. 2000) (collecting cases including *Wirth v. Surles*, 562 F.2d 319 (4th Cir. 1977))). Thus, "law enforcement officials must follow the clear mandates of state and federal extradition laws in the apprehension and transportation of fugitives." *Young v. Nickols*, 413 F.3d 416, 419 (4th Cir. 2005) (brackets removed).

The Uniform Criminal Extradition Act, as enacted by the North Carolina General Assembly, *see* N.C. Gen. Stat. §§ 15A–721 to –750, governs the interstate transfer of fugitives from justice found in North Carolina. *Batten v. Gomez*, 324 F.3d 288, 294 (4th Cir. 2003). The Governor of North Carolina has the duty "to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in [North Carolina]." N.C.G.S. § 15A–722. An extradition demand must be made in writing to the Governor. *Id.* § 15A–723. If the Governor decides to comply with the demand, he signs an arrest warrant that "must substantially recite the facts necessary to the validity of its issuance." *Id.* § 15A–727. The governor's extradition arrest warrant authorizes "any peace officer or other person" chosen by the Governor to arrest the accused in North Carolina and to deliver the accused to the demanding state. *Id.* §§ 15A–727, –728. Section 15A–730 (at issue in this case) details the rights of an accused person arrested on a governor's extradition arrest warrant, including his right to apply for

a writ of habeas corpus:

> No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and *if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record* **shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus**. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

*Id.* § 15A–730 (emphasis added).

## II.     Facts[2]

In July 2019, after failing to appear for trial, Plaintiff was tried *in absentia* in South Carolina state court and convicted of three counts of second-degree burglary; the trial court issued a bench warrant for Plaintiff's arrest. On March 2, 2020, U.S. Marshals arrested him in Randolph County, North Carolina on a fugitive arrest warrant issued by a magistrate pursuant to N.C.G.S. §§ 15A–733

---

[2]     The following facts appear in Plaintiff's complaint (ECF No. 1-1), public records attached to Defendants' motion to dismiss (ECF Nos. 44-1 and 44-2), and public records available through the electronic South Carolina Appellate Case Management System/C-Track (https://ctrack.sccourts.org/public/caseSearch.do [Case No. 2020-001497]) and the Horry County Fifteenth Judicial Circuit Public Index (https://publicindex.sccourts.org/Horry/PublicIndex/PISearch.aspx [Case Nos. 2016A2620602245, 2016A2620602250, and 2016A2620602251). *See Woods*, 855 F.3d at 642 (describing materials a court may consider when ruling on a Rule 12(b)(6) motion); *Fusaro v. Cogan*, 930 F.3d 241, 245 n.1 (4th Cir. 2019) (recognizing a court may take judicial notice of state court documents when deciding a Rule 12(b)(6) motion (citing *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989))); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (explaining courts "routinely take judicial notice of information contained on state and federal government websites"). The R & R and Defendants' motion to dismiss contain a thorough timeline of events with citations to the record. *See* R & R at pp. 2–3, 11–14; ECF No. 44 at pp. 3–8.

and –734.³

On March 11 and 20, 2020, Plaintiff filed two petitions for a writ of habeas corpus (prior to issuance of the North Carolina Governor's extradition arrest warrant dated May 15, 2020), and on April 3, 2020, he filed a motion to dismiss the fugitive warrant. (These filings were unrelated to and did not challenge the governor's extradition arrest warrant because that warrant did not even exist yet.) In April 2020, the North Carolina courts dismissed the habeas petitions and denied the motion to dismiss. Plaintiff also made several appearances in the Randolph County District Court and the Randolph County Superior Court in March and April 2020.

On May 1, 2020, the Governor of South Carolina sent the Governor of North Carolina a demand for Plaintiff's extradition. On May 15, 2020, the North Carolina Governor issued a governor's extradition arrest warrant for Plaintiff's arrest, detention, and delivery to Defendant Sheriff Phillip Thompson of the Horry County Sheriff's Office. On May 19, 2020, the North Carolina Department of Justice sent the governor's extradition arrest warrant to the Randolph County Sheriff's Office.

On May 22, 2020, Plaintiff was served with the governor's extradition arrest warrant and arrested. On May 26, 2020, he was taken before the Randolph County District Court and informed of his right to apply for a writ of habeas corpus and right to counsel; Plaintiff waived his right to counsel but stated he would file a habeas petition. Also on May 26, the Randolph County District Attorney's Office emailed the Horry County Sheriff's Office stating Plaintiff was ready to be picked up. Two days later (May 28, 2020) Defendant Officers Tomkins and John Doe of the Horry County Sheriff's Office

---

³ The Uniform Criminal Extradition Act permits a fugitive's arrest before issuance of a governor's extradition arrest warrant: when another state has not made a formal demand (requisition) to the North Carolina Governor, the accused may be arrested on a warrant issued by a North Carolina judge or magistrate (*id.* § 15A–733, –34) and may be detained for thirty days (or admitted to bail) "as will enable the arrest of the accused to be made under a warrant of the Governor on a requisition of the executive authority of the state having jurisdiction of the offense" (*id.* § 15A–735, –36), and that period may be extended for an additional sixty days. *Id.* § 15A–737.

took custody of Plaintiff in North Carolina and transported him to South Carolina.[4] Plaintiff alleges Defendants Tomkins and Doe removed him from North Carolina over his protest and without allowing him the time or ability to apply for a writ of habeas corpus in North Carolina state court pursuant to N.C.G.S. § 15A–730.

In June 2020, Plaintiff filed the instant § 1983 action in state court seeking damages and alleging Defendants failed to comply with N.C.G.S. § 15A–730 before transporting him to South Carolina. Defendants removed the action to this Court in August 2020 and subsequently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a motion seeking protection from discovery obligations pending resolution of the motion to dismiss.

## **Discussion**

The Magistrate Judge recommends granting Defendants' motion to dismiss because (1) Plaintiff does not allege sufficient facts showing Defendant Thompson was personally involved in the extradition or had supervisory liability for it, (2) Plaintiff fails to state a § 1983 claim concerning his extradition, and (3) Defendants are entitled to qualified immunity. R & R at pp. 4–17. The Magistrate Judge also recommends granting Defendants' motion for a protective order. *Id.* at p. 17.

Initially, the Court notes Plaintiff does not specifically object to the Magistrate Judge's recommendation regarding Defendant Thompson's lack of personal involvement or supervisory liability. The Court discerns no clear error regarding this recommendation and will therefore dismiss Defendant Thompson with prejudice.[5] *See Diamond* & *Camby*, *supra* (recognizing a district court can

---

[4] Plaintiff was sentenced to twelve years' imprisonment on the burglary convictions and sent to state prison. However, as mentioned in his objections and shown by the public appellate record on C-Track, the trial court granted Plaintiff's post-trial motions for a mistrial and a new trial on April 15, 2021 (after entry of the R & R).

[5] *See Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice.").

adopt an unobjected-to recommendation without explanation where there is no clear error).

Plaintiff does, however, specifically object to the Magistrate Judge's recommendation regarding his § 1983 illegal extradition claim. *See* Pl.'s Objs. at pp. 9–12. "[A] damages claim for violation of federally protected extradition rights may be asserted under § 1983." *Young*, 413 F.3d at 419. "To state a 42 U.S.C. § 1983 claim for illegal extradition, an individual must show that the violation of the state's extradition laws 'caused the deprivation of rights protected by the Constitution and statutes of the United States.'" *Batten*, 324 F.3d at 294 (brackets removed) (quoting *Wirth*, 562 F.2d at 322).

> [Over] 100 years ago, in *Roberts v. Reilly*, 116 U.S. 80 (1885), the Supreme Court recognized that individuals have a federal right to challenge their extradition by writ of habeas corpus. Admittedly, the scope of this habeas corpus challenge is narrow, however, the right to the hearing is one secured by the Constitution and laws of the United States. Any denial of this right gives rise to a cause of action under 42 U.S.C. § 1983; for Section 1983 protects all rights, privileges, or immunities secured by the Constitution and laws of the United States.

*Crumley v. Snead*, 620 F.2d 481, 483 (5th Cir. 1980); *see id.* at n.9 (collecting cases including *Wirth* that hold "failure to comply with extradition procedures is actionable under Section 1983"). Thus, when state extradition law provides a fugitive the "right to test the legality of his arrest by petition for a writ of habeas corpus," denial of this right is "actionable under 42 U.S.C. § 1983." *Wirth*, 562 F.2d at 322.

Here, Plaintiff claims Defendants Tomkins and Doe violated N.C.G.S. § 15A–730 by removing him from North Carolina before he had the time or ability to file a habeas petition challenging the governor's extradition arrest warrant. Compl. at pp. 6–9; *see also* Pl.'s Objs. at pp. 10–12. Section 15A–730 (quoted in full above) provides that when an accused person is arrested on a governor's extradition arrest warrant, the person must be brought before a North Carolina judge; and if the person states his "desire to test the legality of his arrest, the judge . . . shall fix a reasonable time to be allowed

him within which to apply for a writ of habeas corpus."[6] N.C.G.S. § 15A–730; *see Payne v. Burns*, 707 F.2d 1302, 1303 (11th Cir. 1983) (explaining this statutory language "is not directed to whether a prisoner will elect to file or not file a petition but rather guarantees him time in which to apply for the writ and holds his extradition in limbo during such time. It prevents an unseemly race to get the prisoner to the state line while he is trying to get a petition filed.").

Plaintiff alleges that after his May 22, 2020 arrest on the governor's extradition arrest warrant, he appeared in Randolph County District Court on May 26, 2020, and "stated he would file his writ of habeas corpus."[7] Compl. at pp. 5–6. Plaintiff asserts Defendants Tomkins and Doe arrived at the Randolph County Detention Center two days later (May 28, 2020), removed him from North Carolina, and transported him to South Carolina "prematurely" over "Plaintiff's protest" and "without allowing [him] the time or ability to lawfully petition the Randolph County Superior Court for a writ of habeas corpus." *Id.* at pp. 6–8.

Accepting these factual allegations as true, as it must *at this stage*, the Court concludes Plaintiff's complaint plausibly states a § 1983 damages claim against Defendants Tomkins and Doe for their alleged failure to comply with N.C.G.S. § 15A–730, which permitted Plaintiff to file a habeas petition testing the legality of his arrest on the governor's extradition arrest warrant. *See Wirth*, 562 F.2d at 322 (recognizing a viable § 1983 claim exists if state extradition law provides a fugitive the

---

[6]   Section 15A–730 allows a "reasonable time" to file a habeas petition but does not define "reasonable time."

[7]   The record does not indicate whether the court "fix[ed] a reasonable time to be allowed him within which to apply for a writ of habeas corpus" pursuant to § 15A–730. The Randolph County District Court issued an order on May 26, 2020 (the date Plaintiff appeared in court) stating, "Governors Warrant Issued / Bond revoked / continue to 6-9-20 for review to see if Deft picked up." ECF No. 44-1 at p. 55. It is unclear on the current record—on a Rule 12(b)(6) motion to dismiss—the significance (if any) of the "6-9-20" date. Plaintiff argues he had until June 9, 2020, to file a habeas petition testing the legality of his arrest on the governor's extradition arrest warrant. ECF No. 54 at p. 6. Defendants take a contrary view, arguing they were entitled to rely upon the North Carolina judicial officer's representations that the fugitive was ready to be transferred and that the asylum state's extradition procedures had been completed. ECF No. 44 at p. 17.

"right to test the legality of his arrest by petition for a writ of habeas corpus" and that right is denied); *see, e.g.*, *Harden v. Pataki*, 320 F.3d 1289, 1292–94 (11th Cir. 2003) (finding the plaintiff who alleged, *inter alia*, that he "was denied the right to a pre-extradition habeas corpus hearing" and was extradited "over his protests" "properly stated a § 1983 damages claim for failure to comply with both federal and state extradition laws); *Good v. Allain*, 823 F.2d 64, 67 (5th Cir. 1987) ("If [the plaintiff] had been denied the opportunity to challenge his removal from Mississippi [via a habeas petition], he might have a viable § 1983 claim."); *Morrison v. Stepanski*, 839 F. Supp. 1130, 1144 (M.D. Pa. 1993) (applying Pennsylvania's Uniform Criminal Extradition Act and finding state troopers "unlawfully deprived [the plaintiff] of his federal right to challenge extradition by petitioning for habeas relief"); *cf. Crumley*, 620 F.2d at 482–83 (involving a § 1983 claim where the sheriff "delivered and surrendered plaintiff to Tennessee authorities while plaintiff's habeas corpus petition challenging the extradition was pending in Alabama state court").

The Magistrate Judge concludes "Plaintiff was unquestionably afforded all rights required under section 15A–730" because that statute "allows Plaintiff only the ability to file a writ of habeas corpus that would 'test the legality of his arrest' rather than the legitimacy of an extradition order," and because he "filed two petitions for writ of habeas corpus and a motion to dismiss the warrant for his fugitive arrest." R & R at p. 15. However, Plaintiff's habeas petitions (filed in **March** 2020) and motion to dismiss (filed in **April** 2020) *did not challenge his arrest on the governor's extradition arrest warrant*, nor could they have. When he made those filings,[8] he had been arrested *on a fugitive arrest warrant*

---

[8]     Again, Plaintiff's motion to dismiss challenged the fugitive arrest warrant. *See* ECF No. 44-1 at pp. 28–31. His habeas petitions alleged denial of access to the courts, retaliatory acts and deliberate indifference by jail officials, and unconstitutional conditions of confinement. *See id.* at pp. 14–27. Notably, his second habeas petition (filed March 20, 2020) noted the absence of a demand by South Carolina for his extradition. *See id.* at pp. 23–24. In his response in opposition to Defendants' motion to dismiss, Plaintiff points out "these filings did not challenge Plaintiff's extradition or the governor's warrant as the Plaintiff had not been served with it yet." ECF No. 54 at p.

9

(issued by a magistrate under N.C.G.S. §§ 15A–**733** and –**734**)—but *not* on a governor's extradition arrest warrant (issued and executed under §§ 15A–**727** to –**730**).[9] The record shows the South Carolina Governor did not send a demand for Plaintiff's extradition until **May** 1, 2020; the North Carolina Governor did not issue the governor's extradition arrest warrant until **May** 15, 2020; Plaintiff was not arrested on that warrant until **May** 22, 2020; and Plaintiff was not taken to court after his arrest on the governor's warrant until **May** 26, 2020.

The events in **May** 2020 triggered Plaintiff's right to "test the legality of his arrest" *on the governor's extradition arrest warrant* by "apply[ing] for a writ of habeas corpus" pursuant to § 15A–730.  *See Ortega v. City of Kansas City*, 875 F.2d 1497, 1500 (10th Cir. 1989) ("Prior to executive demand by the requesting jurisdiction, a criminal suspect does not have a constitutional right that supports a claim under 42 U.S.C. § 1983.").  In sum, Plaintiff was extradited via the governor's warrant—not the fugitive warrant—and his May 2020 arrest on the governor's warrant (not the March 2020 arrest on the fugitive warrant) is the factual predicate for his § 1983 claim.  *See generally Payne*, 707 F.2d at 1303 ("A state prisoner sought to be extradited has a federal constitutional right to test the validity of his extradition by filing a writ of habeas corpus.").  The Court respectfully disagrees with the Magistrate Judge's analysis.[10]

---

4. Relatedly, in his objections, Plaintiff states, "How could Plaintiff possibly file a writ of habeas corpus contesting or questioning a governor's warrant he hasn't received or even been served [with] yet?" Pl.'s Objs. at p. 11.

[9]     Significantly, the provisions of the Uniform Criminal Extradition Act allowing arrest and detention on a fugitive warrant contemplate a separate "arrest of the accused to be made under a warrant of the Governor." *See* N.C.G.S. §§ 15A–733 to –737.

[10]    Defendants contend a fugitive's rights are violated "only if a fugitive is arrested and transported without *any* extradition proceedings." Defs.' Reply at p. 7 (citing *Young* and *Wirth*).  While the facts in *Wirth* involved an extradition from Georgia to South Carolina without any extradition proceedings at all, the Fourth Circuit cited Georgia's version of the Uniform Criminal Extradition Act, specifically Ga. Code Ann. § 44–411 (later recodified at Ga. Code Ann. § 17–13–30), which is the parallel version of N.C.G.S. § 15A–730. *See* 562 F.2d at 321–22. Noting this Georgia statute provided a fugitive "a right to test the legality of his arrest [on a governor's warrant] by

As for qualified immunity, Defendants contend Plaintiff fails to specifically object to the Magistrate Judge's recommendation regarding it. *See* Defs.' Reply at pp. 2, 4–5. "[Q]ualified immunity may be asserted by police officers in § 1983 actions claiming . . . transportation of the plaintiff without complying with the extradition laws," *Street v. Cherba*, 662 F.2d 1037, 1039 (4th Cir. 1981), and such immunity protects "state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

> A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . when asserted at this early stage in the proceedings, the defense faces a formidable hurdle and is usually not successful. This is so because dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is plausible on its face.

*Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (internal quotation marks and citation omitted). Although his objections do not use the precise phrase "qualified immunity," Plaintiff does argue (1) a violation of his extradition rights occurred and (2) he "had a *right* to file for and be heard on a writ of habeas subsequent to being served a governor's warrant, and before being

---

petition for a writ of habeas corpus," the Fourth Circuit rejected "the argument that the violation of Georgia's extradition laws does not give rise to a § 1983 suit." *Id.* at 322. The *Wirth* court broadly stated, "Where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States, a cause of action is stated under 42 U.S.C. § 1983. This court does not believe that law enforcement officials should simply ignore the clear mandates of state and federal extradition laws in the apprehension and transportation of fugitives." *Id.* at 322–23 (internal citations and footnote omitted); *see also Pierson v. Grant*, 357 F. Supp. 397, 398–99 (N.D. Iowa 1973) (approved by *Wirth*) (holding the plaintiff stated a § 1983 claim by alleging "defendants took him to Missouri without complying with Iowa's extradition statutes"). In *Young*, the Fourth Circuit repeated the sentence from *Wirth* that "law enforcement officials [must follow] the clear mandates of state and federal extradition laws in the apprehension and transportation of fugitives." 413 F.3d at 419 (brackets in original) (quoting *Wirth*, 562 F.2d at 323). Significantly, "there is ample circuit court authority for the proposition that failure to comply *with the provisions of the Uniform Extradition Act as enacted by the detaining state* can support recovery on § 1983 claims." *Ortega*, 875 F.2d at 1500 (emphasis added) (collecting cases including *Wirth*).

Defendants also argue, "Plaintiff has never attempted to forecast any potentially viable basis on which he could have challenged his extradition or the Governor's warrant." Defs.' Reply at p. 8. However, Plaintiff asserts the governor's warrant does "not state Plaintiff had already been convicted, but rather falsely lead[s] one to believe that the charges were still pending." Pl.'s Objs. at p. 3.

11

extradited to South Carolina. Any other interpretation of N.C.G.S. 15A–730 is simply ludicrous and suspect." Pl.'s Objs. at pp. 9–12 (emphasis added). Liberally construed, Plaintiff's objections sufficiently address both prongs of the qualified immunity analysis. *See Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) ("[W]hen confronted with the objection of a pro se litigant, we must also be mindful of our responsibility to construe pro se filings liberally."). Regardless, the Court declines to adopt the R & R's qualified immunity analysis because it does not address whether the alleged extradition right at issue—a fugitive's right to file a habeas petition before being removed from the asylum state by the demanding state's officers—was "clearly established."[11] Defendants did not object to the Magistrate Judge's analysis. At bottom, qualified immunity is better left to be determined at the summary judgment stage.[12]

## Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART AND REJECTS IN PART** the Magistrate Judge's R & R [ECF No. 56], **GRANTS IN PART AND DENIES IN PART** Defendants'

---

[11] Defendants cite *Young v. Collier*, No. 6:03-cv-03640-JFA, 2006 WL 2706965 (D.S.C. Sept. 18, 2006), *aff'd*, 252 F. App'x 575 (4th Cir. 2007). Defs.' Reply at p. 5. *Young*, however, was decided on a motion for summary judgment, and *based on the summary judgment record*, the district court concluded that the plaintiff "no longer allege[d] that the underlying extradition proceedings were defective," that the record established the "defendants were acting pursuant to a facially valid extradition order" and had "no duty to inquire into the propriety of the underlying extradition procedures," and that the defendants were entitled to qualified immunity. 2006 WL 2706965 at *2–4. Defendants are free to reassert their qualified immunity defense and any other defenses/arguments via a motion for summary judgment.

[12] The Court notes that while qualified immunity may be an issue based on the meaning of the "6-9-20" date in the North Carolina judicial officer's order (as mentioned in Footnote 7 above), there is also an email dated May 26, 2020, sent from the Randolph County District Attorney's Office to an employee of the Horry County Sheriff's Office stating Plaintiff "has been served with the Governor's Warrant this morning, 5/26/20, and is ready to be picked up." ECF No. 44-2 at p. 5. Defendants mention this email in their motion to dismiss, *see* ECF No. 44 at pp. 2, 7, 14–15, but their reliance on it is somewhat unclear at this stage (which, again, involves a Rule 12(b)(6) motion to dismiss). In any event, the email may provide a better argument for qualified immunity at the summary judgment stage because, unlike the judicial order with the "6-9-20" date, the email is unambiguous. *See McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982) ("**It is unreasonable to require *the demanding state agents* to be familiar with the procedural safeguards enacted in the asylum state's extradition statutes and then further require them to ensure that the statutory safeguards have been followed**." (emphasis added)).

motion to dismiss [ECF No. 44], and **DISMISSES** Defendant Phillip Thompson *with prejudice*. The Court **DENIES** Defendants' motion for a protective order [ECF No. 45] *without prejudice*, as their motion was tied to their request for dismissal. This case will proceed solely as to Plaintiff's § 1983 illegal extradition claim for damages against Defendants Tomkins and Doe.

    **IT IS SO ORDERED.**

Florence, South Carolina  
June 3, 2021

<u>s/ R. Bryan Harwell</u>  
R. Bryan Harwell  
Chief United States District Judge