UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Theodore J. Bolick, ) | Civil Action No.: 5:20-cv-02888-RBH |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Officer Tomkins, John West; Jeff Benton; ) | |
| Linda Shelley; and Reginaldo E. Williams ) | |
| ) | |
|     Defendants. ) | |
| ) | |

Plaintiff Theodore J. Bolick filed this pro se 42 U.S.C. § 1983 action against the above named Defendants alleging his extradition from North Carolina to South Carolina was unlawful. This matter is before the Court for consideration of Plaintiff's objections to the Report and Recommendation ("R & R") of United States Magistrate Judge Kaymani D. West, who recommends denying Plaintiff's motion for summary judgment [ECF No. 162], denying Plaintiff's motion to strike [ECF No. 189], and granting the motion for summary judgment [ECF No. 182] filed by Defendants James Thompkins,[1] John West, Jeff Benton, and Linda Shelley (collectively, the "HCSO Defendants")[2]. *See* R & R [ECF No. 201].[3] The Court adopts the R & R for the reasons herein.

---

[1] Plaintiff's Complaint lists Officer Tomkins, but based on his affidavit, the correct spelling of Defendant Tomkins is actually "Thompkins." *See* ECF No. 182-3. Accordingly, he is referred to as Defendant Thompkins or Thompkins.

[2] These Defendants were employed by the Horry County Sheriff's Office ("HCSO") at the time of the conduct in question.

[3] The Magistrate Judge issued the R & R pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Court is mindful of its duty to liberally construe Plaintiff's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing "[a] document filed pro se is to be liberally construed" (internal quotation marks omitted)). *But see United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) ("Although courts must liberally construe the claims of pro se litigants, the special judicial solicitude with which a district court should view pro se filings does not transform the court into an advocate." (cleaned up)).

**Legal Standards**

I.     **Review of the R & R**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court need only review for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

II.    **Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record ...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* at 875.  Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Background**

I.     **Uniform Criminal Extradition Act**

"[A] number of circuit courts, including [the United States Court of Appeals for the Fourth Circuit], have held that a violation of the [Uniform Criminal Extradition Act] can provide a basis for a § 1983 claim on the ground that the state extradition statutes are derivative of or are implementing federal law (i.e., the Extradition Clause [U.S. Const. art. IV, § 2, cl. 2] and the federal extradition statute [18 U.S.C. § 3182])." *Scull v. New Mexico*, 236 F.3d 588, 596 n.1 (10th Cir. 2000)

(collecting cases including *Wirth v. Surles*, 562 F.2d 319 (4th Cir. 1977))). Thus, "law enforcement officials must follow the clear mandates of state and federal extradition laws in the apprehension and transportation of fugitives." *Young v. Nickols*, 413 F.3d 416, 419 (4th Cir. 2005) (brackets removed).

The Uniform Criminal Extradition Act, as enacted by the North Carolina General Assembly, *see* N.C. Gen. Stat. §§ 15A–721 to –750, governs the interstate transfer of fugitives from justice found in North Carolina. *Batten v. Gomez*, 324 F.3d 288, 294 (4th Cir. 2003). The Governor of North Carolina has the duty "to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in [North Carolina]." N.C.G.S. § 15A–722. An extradition demand must be made in writing to the Governor. *Id.* § 15A–723. If the Governor decides to comply with the demand, he signs an arrest warrant that "must substantially recite the facts necessary to the validity of its issuance." *Id.* § 15A–727. The governor's extradition arrest warrant authorizes "any peace officer or other person" chosen by the Governor to arrest the accused in North Carolina and to deliver the accused to the demanding state. *Id.* §§ 15A–727, –728. Section 15A–730 (at issue in this case) details the rights of an accused person arrested on a governor's extradition arrest warrant, including his right to apply for a writ of habeas corpus:

> No person arrested upon such warrant *shall be delivered* over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him

4

> within which to apply for a writ of habeas corpus. When such writ
> is applied for, notice thereof, and of the time and place of hearing
> thereon, shall be given to the prosecuting officer of the county in
> which the arrest is made and in which the accused is in custody,
> and to the said agent of the demanding state.

*Id.* § 15A–730 (emphasis added).

**II.     Facts**[4]

In July 2019, after failing to appear for trial, Plaintiff was tried *in absentia* in South Carolina state court and convicted of three counts of second-degree burglary; the trial court issued a bench warrant for Plaintiff's arrest. On March 2, 2020, U.S. Marshals arrested him in Randolph County, North Carolina on a fugitive arrest warrant issued by a magistrate pursuant to N.C.G.S. §§ 15A–733 and –734, and Plaintiff was processed into the Randolph County Detention Center ("RCDC").[5]

On May 1, 2020, the Governor of South Carolina sent the Governor of North Carolina a demand for Plaintiff's extradition. On May 15, 2020, Plaintiff was released from RCDC on an unsecured bond. That same day, the North Carolina Governor issued a governor's extradition arrest

---

[4]     The following facts appear in Plaintiff's complaint (ECF No. 1-1), public records attached to the HCSO Defendants' motion to dismiss that are referenced in the HCSO Defendants' motion for summary judgment (ECF Nos. 44-1 and 44-2), Plaintiff's motion for summary judgment, the HCSO Defendants' motion for summary judgment and attached affidavits (ECF Nos. 182-1, 182-2, 182-3, and 182-4), and public records available through the electronic South Carolina Appellate Case Management System/C-Track (https://ctrack.sccourts.org/public/caseSearch.do [Case No. 2020-001497]) and the Horry County Fifteenth Judicial Circuit Public Index (https://publicindex.sccourts.org/Horry/PublicIndex/PISearch.aspx [Case Nos. 2016A2620602245, 2016A2620602250, and 2016A2620602251]). *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (noting federal courts may take judicial notice of state court documents related to the proceeding); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (explaining courts "routinely take judicial notice of information contained on state and federal government websites"). The R & R and HCSO Defendants' motion for summary judgment contain a thorough timeline of events. *See* R & R at pp. 2–5; ECF No. 182 at pp. 2–11.

[5]     The Uniform Criminal Extradition Act permits a fugitive's arrest before issuance of a governor's extradition arrest warrant: when another state has not made a formal demand (requisition) to the North Carolina Governor, the accused may be arrested on a warrant issued by a North Carolina judge or magistrate (*id.* § 15A–733, –34) and may be detained for thirty days (or admitted to bail) "as will enable the arrest of the accused to be made under a warrant of the Governor on a requisition of the executive authority of the state having jurisdiction of the offense" (*id.* § 15A–735, –36), and that period may be extended for an additional sixty days. *Id.* § 15A–737.

warrant for Plaintiff's arrest, detention, and delivery to Sheriff Phillip Thompson of the HCSO. On May 19, 2020, the North Carolina Attorney General's Office sent the governor's extradition arrest warrant and a cover letter ("the cover letter") explaining the necessary procedures to the Randolph County Sheriff. The cover letter was addressed to the Randolph County Sheriff and provided that "**When all statutory requirements** have been complied with and the accused is ready to return to the demanding state, you are to notify" Sheriff Thompson of the HCSO and "This matter is **not completed** until a judge has ordered the subject to return to the demanding state . . . ." Defendant Shelley, the Administrative Assistant in the HCSO Warrants/Fugitive Division, was informed on May 19, 2020, that the governor's extradition arrest warrant was issued, but she indicated she did not take any action at that time because she had not received notification from North Carolina authorities regarding the status of the that warrant.

On May 22, 2020, Plaintiff was served with the governor's extradition arrest warrant and he was arrested. On May 26, 2020, he was taken before the Randolph County District Court and informed of his right to apply for a writ of habeas corpus and his right to counsel; Plaintiff waived his right to counsel but stated he would file a habeas petition. A document titled "Judgment/Order or Other Disposition," dated May 26, 2020, and signed by Judge Scott Etheridge in Randolph County provides "Governor's Warrant Issued/Bond Revoked/continue to 6-9-20 for review to see if Deft picked up." *See* ECF No. 44-1 at 55.

Also on May 26, Defendant Williams, an Assistant District Attorney for Randolph County, emailed Defendant Shelley and stated Plaintiff was served with the governor's warrant and was ready to be picked up. *See* ECF No. 44-2 at p. 5. Upon receipt of that email ("the extradition email"), Defendant Shelley emailed Defendant Benton of the HCSO Field Operations Division to

6

request that he assign two officers to pick up Plaintiff.  The next day, Defendant Benton emailed Defendants Thompkins and West and instructed them to pick up Plaintiff on Thursday, May 28, 2020.  Defendants Thompkins and West contacted Defendant Shelley, and she provided them with necessary details and a packet of information they needed for Plaintiff's extradition. On May 28, 2020, Defendants Thompkins and West went to the Randolph County Sheriff's Office and Defendant Thompkins signed a receipt on the back of the governor's extradition arrest warrant indicating HCSO was taking custody of Plaintiff.  Plaintiff alleges he informed Defendants Thompkins and West that he had not been afforded his right under the North Carolina statute to file a writ of habeas corpus and he instructed them to read the cover letter, but Defendants Thompkins and West transported him back to South Carolina anyway.[6]

In June 2020, Plaintiff filed the instant § 1983 action in South Carolina state court seeking damages and alleging his extradition from North Carolina to South Carolina was unlawful.  ECF No. 1.  Defendants removed the action to this Court.  ECF No. 1.  Defendant Phillip Thompson was subsequently dismissed from this action with prejudice.[7]  ECF No. 64.  Plaintiff filed a motion for

---

[6] Plaintiff was sentenced to twelve years' imprisonment on the burglary convictions and sent to state prison. As mentioned in the HCSO Defendants' motion for summary judgment and shown by the public appellate record on C-Track, the trial court granted Plaintiff's post-trial motions for a mistrial and a new trial on April 15, 2021. However, on June 10, 2021, the trial court granted the State's motion for reconsideration, denied Plaintiff's motion for a mistrial and a new trial, and denied Plaintiff's remaining post-trial motions.  Plaintiff is appealing that decision in South Carolina state court.

[7] Plaintiff has filed a motion for relief from the order dismissing Defendant Thompson. ECF No. 186. Although Plaintiff filed the motion pursuant to Rule 60(b), that rule is inapplicable because the order from which Plaintiff seeks relief is an interlocutory order. *See Fayetteville Invests. v. Com. Builders, Inc*., 936 F.2d 1462 (4th Cir. 1991) (finding a district court correctly held the motion for reconsideration could not be treated under Rule 60 because that rule only applies to final judgments); *see also Watson v. Bowles*, 621 Fed.Appx. 222 (4th Cir. 2015) (noting the portion of the district court's order dismissing some of the named defendants is neither a final order nor an appealable interlocutory or collateral order).  Under Fed. R. Civ. P. 54(b), "the district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc*., 326 F.3d 505, 514-15 (4th Cir. 2003).  Because the Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, district courts in the Fourth Circuit, "in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule 59 for guidance." *Sanders*

summary judgment as to Defendants Thompkins and West. ECF No. 162. The HCSO Defendants filed a motion for summary judgment and response in opposition to Plaintiff's motion that included an affidavit from each of the HCSO Defendants.[8] ECF Nos. 182, 182-1, 182-2, 182-3, and 182-4. Plaintiff filed a response in opposition to the HCSO Defendants' motion for summary judgment and a motion to strike the HCSO Defendants' affidavits. ECF Nos. 188 & 189. The HCSO Defendants filed a reply to Plaintiff's response in opposition and they filed a response in opposition to Plaintiff's motion to strike. ECF No. 192. The Magistrate Judge issued a Report and Recommendation ("R & R") recommending denying Plaintiff's motion to Strike, denying Plaintiff's motion for summary judgment, and granting Defendants' motion for summary judgment. *See* ECF No. 201. Plaintiff has filed objections to the R & R, the HCSO Defendants have filed a reply to Plaintiff's objections, and Plaintiff has filed a response to the HCSO Defendants' reply. *See* ECF

---

*v. Lowe's Home Ctrs.*, No: 0:15-cv-02313-JMC, 2016 WL 5920840, at * 2 (D.S.C. Oct. 11, 2016); *see id.* (collecting cases). Rule 59 motions "may not be used to make arguments that could have been made before the judgment was entered." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir.2002). In a previous report and recommendation, the Magistrate Judge recommended dismissing Defendant Thompson. *See* ECF No. 56. Plaintiff did not object to that recommendation, and this Court, finding no clear error, adopted that recommendation and dismissed Defendant Thompson with prejudice. *See* ECF No. 64; *Diamond & Camby, supra* (recognizing a district court can adopt an unobjected-to recommendation without explanation where there is no clear error). Because Plaintiff could have made the arguments raised in his motion before an order was entered by objecting to that R & R, those arguments are not properly before this Court in a motion to reconsider. *See Butler v. Does*, 456 Fed.Appx. 309, 310 (4th Cir. 2011) (modifying the denial of Rule 59 relief to show that the motion was denied because the plaintiff failed to timely file objections). As such, Plaintiff's motion for relief [ECF No. 186] from the order dismissing Defendant Thompson is denied. Furthermore, even if Defendant Thompson would not have been dismissed pursuant to the HCSO Defendant's motion to dismiss, he would have been entitled to qualified immunity for the reasons detailed later in this Order.

[8]     Defendant Reginaldo Williams has separately filed a motion to dismiss, and Plaintiff has filed a response in opposition to that motion. ECF Nos. 195 & 200. The Court notes Plaintiff seeks monetary damages against Defendant Williams (the assistant district attorney). ECF No. 77 at p. 77; ECF No. 88 at p. 3. The Court will grant Defendant Williams's motion because Plaintiff's claims are barred against Williams in his official capacity by the Eleventh Amendment and barred against him in his individual capacity by the doctrine of prosecutorial immunity. *See Nivens v. Gilchrist*, 444 F.3d 237, 248-50 (4th Cir. 2006) (finding dismissal proper for similar reasons); *id*. at 249 (applying Eleventh Amendment immunity to North Carolina district attorney); *Dababnah v. Keller-Burnside*, 208 F.3d 467, 471-72 (4th Cir. 2000) ("[S]eeking extradition is one of those prosecutorial functions to which the reasons for absolute immunity apply with full force." (internal quotation marks omitted)).

Nos. 204, 206, and 207. The Court adopts the R & R for the reasons herein.

**Discussion**

The Magistrate Judge recommends denying Plaintiff's motion to strike and Plaintiff's motion for summary judgment. The Magistrate Judge also recommends granting the HCSO Defendants'[9] motion to for summary judgment because (1) the HCSO Defendants did not participate in the alleged constitutional violations and (2) the HCSO Defendants are entitled to qualified immunity.

Initially the Court notes Plaintiff does not specifically object to the following recommendations of the Magistrate Judge: (1) Defendants Shelley and Benton are entitled to summary judgment;[10] (2) Plaintiff's motion to strike[11] should be denied; (3) and Plaintiff's motion

---

[9] Plaintiff objects to the Magistrate Judge categorizing Defendants West, Thompkins, Benton, and Shelley as a group and labeling them the HCSO Defendants. *See* ECF No. 204 at p. 2. This objection is overruled because although the Magistrate Judge categorized the Defendants as the HCSO Defendants, the Magistrate Judge detailed each Defendants' conduct separately throughout the R & R. Plaintiff contends the extradition email was never seen by Defendants Thompkins and West so the Magistrate Judge should not have found they were acting pursuant to that email. ECF No. 204 at p. 2–4, 15. However, even assuming Defendants West and Thompkins did not see the extradition email, that email prompted Defendant Shelley to ask Defendant Benton to assign deputies to transport Plaintiff back to South Carolina, which prompted Defendant Benton to assign Defendants Thompkins and West to pick up Plaintiff in North Carolina pursuant to a governor's warrant. *See* ECF No. 182-1 at ¶¶ 26–29 and pp. 11–12; ECF No. 182-2 at ¶¶ 7–8; ECF No. 182-3 at ¶ 12; ECF No. 182-4 at ¶ 5. Defendants Thompkins and West also met with Defendant Shelley before going to pick up Plaintiff, and Defendant Shelley provided them with the details necessary for transport, including a packet of information with documents related to the governor's extradition arrest warrant. ECF No. 182-1 at ¶ 30, ECF No. 182-3 at ¶ 13, ECF No 182-4 at ¶ 6. As such, Defendants Thompkins and West were acting pursuant to the extradition email. There is no indication that in the process of being assigned to transport Plaintiff there was any reason for any of the HCSO Defendants to believe Plaintiff was not ready for pick up.

[10] In fact, Plaintiff concedes Defendants Shelley and Benton are entitled to summary judgment. *See* ECF No. 207 at p. 4.

[11] In his objections, Plaintiff notes that the affidavits of the HCSO Defendants were fabricated, orchestrated, and manufactured by their counsel to have this Court grant them summary judgment. ECF No. 204 at p. 9. However, Plaintiff's rehashing of the arguments made in his motion to strike does not serve as a specific objection to the Magistrate Judge's analysis and finding that the affidavits are admissible under Federal Rule of Civil Procedure 56(c)(4). *See* ECF No. 201 at pp. 6–9; *see Orpiano*, 687 F.2d at 47 (the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations.").

for summary judgment against Defendants Thompkins and West should be denied. The Court discerns no clear error regarding these recommendations and will therefore grant summary judgment as to Defendants Shelley and Benton, deny Plaintiff's motion to strike, and deny Plaintiff's motion for summary judgment. *See Diamond & Camby*, *supra* (recognizing a district court can adopt an unobjected-to recommendation without explanation where there is no clear error).

Plaintiff objects to the Magistrate Judge's recommendation regarding his § 1983 illegal extradition claim as it relates to Defendants West and Thompkins. "[A] damages claim for violation of federally protected extradition rights may be asserted under § 1983." *Young*, 413 F.3d at 419. "To state a 42 U.S.C. § 1983 claim for illegal extradition, an individual must show that the violation of the state's extradition laws 'caused the deprivation of rights protected by the Constitution and statutes of the United States.'" *Batten*, 324 F.3d at 294 (brackets removed) (quoting *Wirth*, 562 F.2d at 322). Thus, when state extradition law provides a fugitive the "right to test the legality of his arrest by petition for a writ of habeas corpus," denial of this right is "actionable under 42 U.S.C. § 1983." *Wirth*, 562 F.2d at 322.

Here, Plaintiff claims Defendants Thompkins and West violated N.C.G.S. § 15A–730 by removing him from North Carolina two days after he was served with the governor's extradition arrest warrant and before he had the time or ability to file a habeas petition. Plaintiff argues that in finding Defendants Thompkins and West did not violate Plaintiff's constitutional rights the Magistrate Judge disregarded Defendants Thompkins and West's duty to know North Carolina's extradition law. ECF No. 204 at pp. 4–10. Plaintiff also argues the Magistrate Judge ignored the fact that he informed Defendants West and Thompkins he was not afforded his right to file and be heard on a writ of habeas corpus and the fact that he directed them to read the cover letter. *Id*.

10

Section 15A–730 (quoted in full above) provides that when an accused person is arrested on a governor's extradition arrest warrant, before the person may be delivered to the demanding state, the person must be brought before a North Carolina judge; and if the person states his "desire to test the legality of his arrest, the judge . . . shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus." N.C.G.S. § 15A–730. This requirement is couched in terms of what *North Carolina* officials must do before delivering a person to a demanding state for extradition. Likewise the governor's extradition arrest warrant and the cover letter that Plaintiff relies on both set forth requirements for *North Carolina* officials to complete before delivering a person to the custody of the demanding state.[12] Neither North Carolina law nor the aforementioned documents impose a duty on the demanding state agents. *See McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982) (finding a Missouri extradition statute that required Missouri authorities to hold a judicial hearing before delivering a fugitive to the demanding state imposed no duty on the demanding state agents to ensure that the pre-extradition hearing was held). Furthermore, the record establishes that even assuming Plaintiff informed Defendants Thompkins and West that he was not afforded his right to file a writ of habeas corpus, Defendants Thompkins and West were acting pursuant to a facially valid governor's extradition arrest warrant and instructions from their supervisor and Defendant Shelley that Plaintiff was ready to be picked up pursuant to that warrant.[13]

---

[12]   The governor's extradition arrest warrant is addressed "TO THE SHERIFF OR OTHER OFFICER OF THE STATE OF NORTH CAROLINA" and provides "you are required to arrest and secure . . . the said accused . . . and afford him/her such opportunity to pursue a WRIT OF HABEAS CORPUS as is prescribed by the laws of this State and to thereafter deliver the said accused to the custody of the [demanding state]." ECF No. 44-2 at pp. 6–7. The cover letter that Plaintiff contends Defendants Thompkins and West read was addressed to the Sheriff of Randolph County, North Carolina and noted "When all statutory requirements have been complied with and the accused is ready to return to the demanding state, you are to notify [HCSO]." ECF No. 44-1 at pp. 37–38.

[13]   As previously indicated the process of Plaintiff's extradition was set into motion upon Defendant Shelley's receipt of the extradition email from a North Carolina official, and there is no indication that in the process of being assigned to transport Plaintiff there was any reason for Defendant Thompkins or DefendantWest to question the

11

There is no indication that any official in North Carolina raised concerns related to Plaintiff's extradition. As officers of the demanding state, Defendants Thompkins and West were under no duty to "be familiar with the procedural safeguards enacted in the asylum state's extradition statutes and then further . . . ensure that the statutory safeguards have been followed." *Id.*; *see Young v. Collier*, No. 6:03-cv-03640-JFA, 2006 WL 2706965 (D.S.C. Sept. 18, 2006), *aff'd*, 252 F.App'x 575 (4th Cir. 2007) (finding officers of the demanding state "were under no duty to inquire into the propriety of the underlying extradition procedures" and noting the officers acted pursuant to a facially valid extradition order to pick up the plaintiff); *Brown v. Nutsch*, 619 F.2d 758, 765 (8th Cir. 1980) (finding the police officers of a demanding state, carrying out a facially valid extradition, have no duty to make a determination regarding the propriety of extradition).[14] Thus, even viewing the evidence in the light most favorable to Plaintiff, because Defendants Thompkins and West did not have a duty to ensure North Carolina authorities followed North Carolina extradition law they neither caused nor participated in any failure to allow Plaintiff time to file a writ of habeas corpus.

Furthermore, even if this Court were to find Defendants Thompkins and West could be held liable, the Court agrees with the Magistrate Judge's recommendation that those Defendants are immune from such liability because they are entitled to qualified immunity.[15] "[Q]ualified immunity may be asserted by police officers in § 1983 actions claiming . . . transportation of the plaintiff without complying with the extradition laws," *Street v. Cherba*, 662 F.2d 1037, 1039 (4th Cir.1981), and such immunity protects "state officials from money damages unless a plaintiff pleads

---

assignment from Defendant Benton or the instructions from Defendant Shelley. *See* discussion *supra* note 9.

[14]    Plaintiff's attempt to distinguish the *McBride* and *Nutsch* cases from the case at hand are unpersuasive.

[15]    Plaintiff objects to the recommendation regarding qualified immunity, arguing Defendants Thompkins and West did not act in good faith. ECF No. 207 at p. 7.

facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "[I]t is well-established that a police officer is entitled to qualified immunity from an assessment of damages against him if he acted with a reasonable and good faith belief that he acted lawfully." *Street v. Cherba*, 662 F.2d 1037, 1039 (4th Cir. 1981).

Defendant Shelley's affidavit outlined the HCSO's procedure for obtaining a governor's extradition arrest warrant and coordinating extradition. ECF No. 182-2. Those procedures were followed in this case, and after receiving notice from a North Carolina official, Defendant Shelley had Defendant Benton assign Defendants Thompkins and West to pick up Plaintiff. Defendants Thompkins and West picked up Plaintiff for extradition pursuant to a facially valid governor's extradition arrest after being instructed by their supervisor to do so and after receiving the necessary paperwork and instructions from Defendant Shelley. *See* ECF No. 182-1, 182-3, 182-4; *see also Young*, No. 6:03-cv-03640-JFA, 2006 WL 2706965 at *4 (finding the named defendants were entitled to qualified immunity in regards to the plaintiff's allegations of illegal extradition). Furthermore, there is no indication that any official from North Carolina informed Defendant Thompkins or Defendant West that North Carolina extradition law was not complied with or that Plaintiff had not been afforded an opportunity to file a writ of habeas corpus. As such, even assuming Plaintiff informed Defendants Thompkins and West he should not be extradited because he had not had a chance of file a writ of habeas corpus, Plaintiff has not shown that Defendants Thompkins and West were not acting under a good faith belief that they were acting lawfully in extraditing Plaintiff, and Plaintiff has not shown any "clearly established" law requiring those

Defendants to inquire into the propriety of his extradition.[16]

**Conclusion**

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's R & R [ECF No. 201], **DENIES** Plaintiff's motion for summary judgment [ECF No. 162], and **DENIES** Plaintiff's motion to strike [ECF No. 189]. The Court **GRANTS** the HCSO Defendants' motion for summary judgment [ECF No. 182] and **DISMISSES** Plaintiff's claims against the HCSO Defendants *with prejudice*.

The Court **DENIES** Plaintiff's motion for relief from order [ECF No. 186] for the reasons given in footnote 7. The Court **GRANTS** Defendant Williams's motion to dismiss [ECF No. 195] and **DISMISSES** Plaintiff's claims against Defendant Williams for the reasons given in footnote 8. The Court **DIRECTS** the Clerk to close this case.

**IT IS SO ORDERED.**


Florence, South Carolina                         s/ R. Bryan Harwell
September 22, 2022                               R. Bryan Harwell
                                                 Chief United States District Judge

---

[16] Plaintiff also objects to what he refers to as the Magistrate Judge's "blatant but consistent abuse of discretion." ECF No. 204 at pp.10–14. This objection is not a specific objection to the R & R, but regardless, upon a de novo review of the record, this Court finds no merit in this objection, and the objection is overruled.